Your Honor, may it please the Court, Leigh Ann Anderson here on behalf of Appellant David Meyers in these consolidated cases. The question before the Court is the question the Court itself asked, which is, is there a nexus requirement in the eminent danger prong of the three-strikes rule under the informal papyrus statute? And we submit that there is not. Before the Court are two consolidated appeals. When David Meyers filed both of his appeals in this Court, he was sent a form. He was flagged as a, I know I'm going to mess up and say frequent flyer, but I'm going to try not to do that, frequent filer, and was sent a form asking whether or on what basis he intended to proceed with these appeals. He answered that he was receiving inadequate medication and resulted in him hearing voices telling him to kill himself and that he was refused protection by prison officials to stop other inmates. On that basis, we submit that he should be allowed to proceed in this Court with his appeal and in the district court below without prepaying the filing fees as required by the three-strikes rule. And we believe this is simply a matter of plain text of the statute. As the Court knows, it says in the context of this clause of the statute, in no event shall a prisoner bring a civil action or appeal of judgment in a civil action or proceeding under this statute, the IFP statute, and it goes on to talk about the three-strikes rules. And then we have to stop. Why do we have to stop? Because there's a comma. And it says, unless the prisoner is under imminent danger of serious physical injury. This is a gateway. There is no requirement that there be a nexus. There is no requirement that there be a relation at all. Then under your reading, wouldn't we be permitting three-strike prisoners to just file limitless, we'll be going back to limitless filings, if all they have to do is say the magic words, imminent danger? I don't think that's the case. Because first of all, they actually do have to prove or plead, at least, that there is an imminent danger of serious physical injury. And we can see... Well, that's the point. But the question is, how do they have to plead it? And you say, well, we got it. We would have to get into a big trial or something like that or a hearing or what have you, even to decide the gateway issue. I don't see it that way. I would think that one could look at the complaint and then match the complaint up against the pleading requirements that have been set forth by the Supreme Court in both the Ashcroft and the Twombly cases and ask whether something has been pled, not just in a possible or but in a plausible way. And when you apply a standard of plausibility to the complaint, it's totally conclusory and also delusional. And what it says is just without supplying any particulars whatsoever, it says conspiring to commit everybody in the whole prison is somehow conspiring to commit sexual abuse, murder, death threats, serious injury against him. And that's what the complaint essentially says. And if we approve that as fitting within the established, to follow on Judge Thacker's point, we've just established a boilerplate and a template with which to evade Congress's whole purpose, which was to give people who have one or two chances the chance to have their case heard in a timely manner for the first time, as opposed to hearing this gentleman for the 25th time or whatever it is. I can't even count them. With respect, Judge Wilkinson, I believe at least one of the parties here has conceded that the eminent danger standard is met by Mr. Meyer's pleading. And further, there is no nexus requirement as the Second Circuit holds. I don't see the nexus requirement in a little bit of a red herring, because what it means is, as I understand it, a nexus is simply one of those factors that can be, it's not a rewriting of the statute. It's a question of whether it's one of those factors that can be utilized in judging whether a complaint meets the exception. And if there's no nexus, it's unlikely the exception has been met. But if there is a nexus, it doesn't mean that the pleading standard has been met. Well, to answer Judge Thacker's question, what happens after the appeal is docketed, or even before it's docketed, is you go immediately to the frivolity review. And so, no, this doesn't open any floodgates. In fact, this is a simple gateway exception that Congress wrote into the statute. Nothing in the legislative history. Excuse me, Judge. Sorry about that. What is the purpose of the exception? Nothing in the legislative history that has been cited by the government tells us that. Well, you don't have to look at the legislative history. Just looking at the text of the statute, under your reading of the text of the statute, what is the purpose of the imminent danger exception? It is there to allow people who are under imminent danger of serious physical injury to be able to docket their complaint or appeal without prepaying their filing fees. So, someone who already has three strikes. Correct. There's a limited exception if they're under imminent danger. Yes, of serious physical injury. So, to protect them from serious physical injury, there's an exception. Even if they've gotten their three strikes, but there's an exception to protect them. Exactly. And remember, these are pro se litigants. So, they may not file the right thing. They may not plead the right thing. I'm wondering if we can understand from the text of the statute that the exception is to protect the prisoner when they're in danger of physical injury. Then, isn't the exception limited to cases where they're asking the court to protect them from the physical injury? They're not just saying, my life's in danger, please hear my civil suit about something else. They're saying, my life's in danger, please help me, protect me from that danger. And if that's what congressmen could have said so, but they didn't. But we just agreed that was the purpose of the exception, yes? Well, we don't really know because the legislative history doesn't tell us. But one policy argument, the government makes a policy argument that they put this in to cut down on vexatious litigation. It could also make the policy argument that they put this here to make sure if there was any threat of any sort, even if they... I don't think we need to talk about policy arguments, but they may be helpful. But I'm just trying to understand from the text of the statute why there's an exception. The congress could have said, three strikes and you're out, but they didn't. They said three strikes and you're out unless you're in danger. And then you can go to the court because we want to protect you from that danger. Well, they said, well, and then you can go to court. You still have to go through the fidelity review, and this all has to do with whether you prepay... Counsel, I'm sorry. I'm sorry, Your Honor. I'm just trying to understand what purpose the exception serves under your interpretation. So under your interpretation, what purpose does it serve to let someone who has three strikes come into court and say, I'm in danger. Please hear my lawsuit about something unrelated to the danger. What purpose does that exception serve? The purpose that exception serves is that it allows the court to decide whether or not the underlying lawsuit is frivolous. If it is not, then the complaint or appeal can be docketed and it can be heard. But why would Congress want to allow that? Isn't that arbitrary? If the person has three strikes? We don't know. There's no nexus requirement in the statute. We simply have the words. It says unless. But the words themselves, imminent danger of serious bodily harm. I mean, those are pretty strong adjectives. And they set a high bar, and it's petitioner's burden to clear that bar. And the question I have is, if there's some specificity in the pleadings that indicates an imminent danger of serious bodily harm, then okay, the exception is met. But what I worry about is allowing the exception to swallow the rule because anybody could essentially come in with a plea that's conspiring against me. Now, as I understand the pleading standards, which I think apply here to this complaint, some specificity should be required. Some fleshing out of the nature of the complaint. It can't be just all speculative or what happened. You have to show why is this imminent? He's been filing cases for such a long period. It's hard to believe that anything is imminent. And it just, it's the presumption is that you prepay after three strikes. The exception would seem to place the burden on the petitioner. And I question whether the burden can be met by somebody with a long trail of statements, which undercuts eminence, and a complete absence of specificity as to what the imminent danger of the harm is. I mean, it's just a kitchen sink approach. Everybody in the prison is out to get me in every conceivable way. Well, if that kind of boilerplate suffices to invoke the exception here, then I wonder whether we're just repealing, essentially, or providing a pathway to do exactly what Congress did not want done. There has to be some meaning. I agree, Judge Wilkinson. And as I noted, one of the appellants here conceded not only that we met that pleading standard, but that even if you bought the Pettus-Nexus argument that we met it. We have to make an independent judgment on that as to whether we should hear this appeal on the merit or dismiss the appeal. And that's our judgment. I understand, Your Honor. We were asked to brief the Nexus question, but we also believe that the imminent danger of serious bodily injury... I noticed on the page four and footnote four, I think it's of your brief, it says, it appears that after the court issued is consolidating the matters, the appellant docketed additional appeals. And then by my count, there were 10 additional appeals dealing with everything under the sun, social security benefits, this and that. Now, how does the 10 additional appeals just in this short period persuade a court that imminent danger of serious bodily harm has been plausibly pled? I mean, if you were in imminent danger of serious bodily harm, you would be specific about it. It would be the subject of a single complaint. There wouldn't be 10 complaints spread all over the landscape. Your Honor, I believe that the standard is independent and was provided in the notice to the court when asked how he planned to proceed given his three strike status. I also believe, as we pointed out in our brief, that for particularly vexatious litigants, the federal courts have vast powers to orders even beyond what's in the statute to deal with those. And if I'd like to, unless you have further questions at this time, I'll reserve the remaining amount of my time. Good morning. May it please the court, I'm Lowell Sturgill from the Department of Public Safety and the Commissioner of Social Security. As every court to address this question has held, the imminent danger exception to the PLRA's three strikes rule is a safety valve to prevent impending harms. It follows that to invoke the exception, a prisoner must allege a nexus between the claims of the complaint and the imminent danger alleged. Otherwise, as you've discussed, it's just the rule would open season for inmates to just file endless numbers of civil suits that completely have nothing to do with redressing any kind of... The point that I'm getting at is that the nexus requirement is not some independent requirement that we're using to rewrite the statute. The nexus requirement is simply one factor that courts can use in arriving at a judgment as to whether there's an imminent danger of serious physical harm. So I think that's a permissible way to look at the question. The Second Circuit looked at it a different way and looked at it as well. Well, maybe so, but I mean, my approach is to look at those two adjectives, each of which is rather strong in its own right, imminent danger of serious physical harm. And if there's no nexus, there's no imminent danger of serious physical harm. So that's derivative. The nexus requirement is derivative from the two strong adjectives. So that answers a lot of questions, but it does not, the nexus requirement does not, as I understand it, say that even if there is a nexus, that somehow the pleading standard is met, because you still have to ask what Ashcroft and Iqbal are asking, whether it has plausibly been, whether imminent danger of serious physical harm has been plausibly pled. And if one, and the operative document has got to be a complaint. And if one line in a complaint, one conclusory line in a complaint, is enough to get you in without prepayment, what does that do to the entire congressional purpose? I mean, I don't, there are going to be cases where somebody plausibly pleads that there's a danger of physical harm and wants the protection of the court to avoid that. But this, I'm not, this is not that case. So if I'm understanding correctly, I think you end up at the same place that the second circuit does. So that however you formulate the test, that would be acceptable to us. But it's important to respect the overall congressional purpose. And what troubled me was that the claim was made that it was somehow, would be somehow amending the statute by adopting a nexus test. I don't see that at all. I just think it's one of the factors that courts can use or not use to assess the ultimate question of imminent danger and seriousness of bodily harm. We certainly agree with that. And I would also point out one of the arguments we heard this morning is that there's no need for this interpretation of the imminent harm exception because the courts can always dismiss a complaint based on frivolousness review. And I think the answer to that is that Congress looked at this issue and deemed that... Once you get into the frivolousness review, and of course the cases are frivolous, because the computation of the benefits is left to the agency and federal courts are not able to enter mandamus petitions against state governors. I mean, they're totally frivolous on the merits. But the question is, do we have even the authority to do anything other than to dismiss the appeal? Do we have any authority to get into the merits, which could be adjudicated within about five seconds? Right. So Congress... All I have is, if we got to the merits, that would see the issue. Right. Exactly, Your Honor. So Congress provided the three strikes provision as an additional tool that could weed out claims even earlier than a frivolousness review, which is, in the end, a merits review, even though it's pretty clear in cases like this that the claim, as you say, is frivolous. But the frivolousness was not... That kind of review was not enough to stem the flood of prisoner suits. So Congress gave you the three strikes rule as an additional tool with the limited exception that if something that the prisoner needs to file in order to protect themselves from imminent harm, they can file as IFP status. Again, the plaintiff concedes in this case that the social security claim has no relationship to the three strikes rule. The other thing they say is that I want to address is they say that our rule would allow prison officials to create open season on inmates and just do to them anything that they want to do because they wouldn't have the money to file suits. Well, that's not correct. As we pointed out in our brief, section 1915B4 of the IFP statute provides very clearly that if a prisoner has no funds, then they can file a suit as an IFP status. So this doesn't have anything to do with that. If they don't have funds and something bad is happening to them, they can file a suit even if there's no nexus to their imminent danger. Final thing I would say is that this court in the Chase versus O'Malley case adopted our understanding of the purpose and meaning of the imminent danger exception. Chase did that in the context of holding that an imminent danger must exist at the time the complaint is filed as opposed to prior to when the complaint is filed. Because if it's just prior, then again it's not necessary to allow the suit to proceed to remedy any kind of imminent harm. So you've already sort of gone down the road to accepting what the purpose and function of this term is in the statute and we're just asking you to follow on with that and do the same thing here. Chase was unpublished, but it was certainly reflected the considered judgments of three judges on this court. And every other court to address that question has arrived at the same result. And also every court to have addressed the question presented here, right, which is whether the imminent danger exception requires a nexus has also arrived at that result. And finally I would say here I think is to give some meaning to those adjectives in that exception. And also not just to consider the plaintiff before us, but the reason for the exception, which was just basic considerateness to other litigants who are calling upon the finite resources of the judicial system for the first time or the second time or whatever and not have consideration of possibly meritorious claims that are filed for the first time by somebody crowded out by somebody who's filing 30 petitions. That, you know, you have to consider other people. So we completely agree with that and I would just notice I went back and looked through some of his claims that the court has dismissed. In April of 2019, the court dismissed his frivolous claim. He said that the person had violated his Eighth Amendment rights by giving him stale honey bun. So I think that's indicative of exactly what you're talking about. The final point I would make is that counsel says that adopting our understanding of the exception would admire the court in these hearings and things. And Judge Wilkinson, I think you've answered that by showing that this is really, in most, in almost all cases, you just look at the complaint, you look at the imminent danger exception, and you can see. You don't have to hold a mini-trial. Congress never wanted us to hold a mini-trial because that would consume more in a gateway issue than it would nullify the purpose of the gateway, which was for a quick disposition of repetitive filings. And then there's a mini-trial. You look at the complaint. So exactly. And I think even in this case, again, the plaintiffs have conceded that there's no nexus between the allegations of the Social Security complaint and the imminent danger alleged. So at the very least, our interpretation of this provision solves this case without the that there's no nexus. With that, Your Honors, if there are no more questions, we would rest on our briefs. Please. Good morning, Your Honors, and may it please the Court. Martine Sicconi for the State Points, echoing Mr. Sturgill's argument and some of the comments from the panel. First, this Court's task in this case, as in all statutory interpretation cases, is to determine what Congress meant by looking to the words that it used in the context in which it used them and with the background of the broader statute as a whole. And here, that well-trodden path of statutory interpretation leads to an obvious conclusion. By carving out a narrow set of cases from the three strikes rule, Congress intended to ensure that the courthouse doors would remain open to prisoners seeking a judicial remedy for an imminent, serious physical harm. Reading the imminent danger exception to include, to require a nexus between the injury claimed and the judicial relief sought is fully consistent with that intent. Mr. Myers believes that Congress meant something different, and I think this goes to Judge Rushing's question. In his telling, Congress didn't care whether the action the prisoner brings relates to the injuries he claims. As long as he can show an imminent, serious physical danger, he can bring any claim whatsoever against any defendant at all. But there's nothing in the imminent danger exception, in the strikes, in the three strikes rule more broadly, or in the PLRA, that suggests that Congress was attempting to make a distinction between classes of litigants. Rather, by including the imminent danger exception in the three strikes rule as a narrow exception to the general bar set by that rule, Congress was endeavoring to provide an exception for a particular class of claims, not a particular class of claimants, specifically those in which a prisoner was seeking a judicial remedy for serious, physical harm. And for that reason, it makes perfect sense to understand the imminent danger exception to require that the injury on which the prisoner predicates his entitlement to come through the safety valve exception to be traceable to the action that he seeks to bring before the court. The second point I'd like to make is the point that Mr. Sturgill concluded with, which is that the practical import of this understanding of the imminent danger exception does not create the complications that my friend on the other side suggests. Contrary to Mr. Myers's contention... We can look at the complaint, correct? That's absolutely right, Your Honor. And do we need to look any farther than the complaint? Absolutely not, Your Honor, and I think this case well shows that. Well, if we can look to the complaint, we need not look any farther than the complaint. It surely cannot be the case that one can avail themselves of the exception by a one-sentence, conclusory statement, which is also delusional in nature. Your Honor, I think that the question of what the substance of the allegations in the complaint are is a little bit of a separate question than whether the... If this suffices to invoke the exception, then what we're doing is essentially saying that you can plead the words of the statute without... With very little support and have that suffice to get... To allow you to get into court. Your Honor... It would be saying, okay, here's all you need to do. Your Honor, as my friend on the other side noted, we did concede in this case that the nexus requirement was met, and I think our purpose in doing that was to focus the court's attention on the traceability between the injury claimed and the suit itself. I recognize, of course, that the allegations are extremely conclusory and fanciful, and for that reason, I don't disagree with Your Honor. Okay, if they're conclusory and fanciful, as you've indicated, you said how can it be said that they've been plausibly... That the exception has been plausibly pled? Your Honor, I think in this case, we were trying to follow this court's admonition to liberally construe pro se pleadings, and for that reason, again, with the focus on the connection between the injury claimed, that was the reason that we... But there's no... Even given the thing of liberal construction, there's no difficult question of law here. All you have to do is explain in plain English what the danger is. It gives something, gives some specificity to it. Your Honor, I think he did provide a certain amount of specificity. He talked about, you know, not being protected by his custodians from a particular criminal mastermind, and again, I understand that these allegations are very fanciful. You've said yourself that these are fanciful allegations, and that these are conclusory allegations. Yes, Your Honor, and like in many cases involving pleading, particularly pro se pleadings, it's maybe a fine line between, you know, when a pleading is so fanciful that it doesn't meet the Rule 8 standard, and I think in this case, you know, again, we have conceded here that the nexus requirement is met because there is a certain traceability between the injury and not. My whole point is that the nexus requirement is a secondary matter and that it's not by itself outcome dispositive. It's certainly not outcome dispositive of the merits. I completely agree with you that even. No, of the gateway. Well, Your Honor, I think that to your point, the nexus requirement adds to the notion of imminent threat and imminent danger, and what it does is explain what kinds of cases this, that Congress intended to allow to go through that gateway. How can this be imminent when this history of pleading has, history of filing lawsuits has been day after day, week after week, month after month, and nothing has happened? And so how can this, you know, we have our precedent, circuit precedent saying that imminence is constructed or imminence is judged at the time of the complaint. And here you have what we jointly agree is a conclusory and fanciful complaint and a history of complaints which are spread all over and strewn all over the landscape. And to say that something like that meets the gateway exception, there's nothing imminent about somebody who's been litigating this, that, and the other for years. And there's nothing, you know, there's, and again, we, I understand your point about the nexus requirement, but we, I really think we're on the same page. Your Honor, absolutely. I agree we're on the same page. I think we both agree with the fact that it's conclusory and fanciful. And as a representative of the Commonwealth of Virginia, you should want that kind of against claims being brought over and over and over again and burdening the Attorney General's office and the federal courts and everything with saying for the 15th, 20th, 25th time that something is frivolous. Your Honor, I think I agree with you. We're in complete agreement about the kinds of cases that Congress intended to go through the gateway. And we're also in agreement that there should be no trial within a trial or significant factual development. And I think for that reason, of course, this determination has to be made based on the complaint. I think to the extent that there's any disagreement, it's only on, you know, whether his complaint is sort of, yes, fanciful and conclusory, but sufficient enough to meet the standard. And I, at a minimum, I agree it's close to the line. It's been sufficient when he's been litigating for years and nothing has happened. It's supposed to be imminent under our precedent at the time the complaint is filed. Well, Your Honor, again, I think in part to avoid the further analysis, it would be appropriate to limit the query to the particular pleadings in that case. So you're not required to go back and look through all of the other things. But again, there's no disagreement that, you know, Mr. Myers is a vexatious litigant and the claims that he has brought here are completely meritless. I don't disagree with you at all in any way. And I certainly don't disagree with you that the nexus requirement speaks to exactly what for what is otherwise a significant bar to this kind of vexatious litigation. Okay. Thank you very much. I'm going to ask my further questions. We have no further questions. Thank you. Thank you, Your Honor. Ms. Anderson. David Myers is a severely mentally ill man. He also has a number of significant physical injuries. One of his claims in asking to file his appeal on this court was that he was not being properly medicated and continues to hear voices urging him to kill himself and that he is in danger. You know what? There are all kinds of claims for that under the Eighth Amendment. They could have been brought in a number of prior suits. Inadequate medical care is an Eighth Amendment claim. The federal courts are open to it. But after all these years, an Eighth Amendment claim of inadequate medication and whatnot has not succeeded so far as I know. And it's not, you know, this is a question of not of an Eighth Amendment claim, because that draws us into the merits. It's a question of whether there's an imminent danger of serious physical harm. And maybe it could have been pled, but it wasn't pled. Judge Wilkinson, in this case, I realize we may not have the ideal appellant. We were asked to brief the question of the nexus requirement, and we would urge this court not to adopt the reasoning impedent. Okay. Thank you. We will come down and greet counsel and take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Allison J. Rushing